**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| INTERVENTION ENERGY HOLDINGS, LLC, *et al.*,[1] | ) | Case No. 16-11247 (KJC) (D.I. 27) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**OPINION[2]**

**BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE**

**BACKGROUND**

Before the Court is the EIG Energy Fund XV-A, L.P. Motion to Dismiss the Chapter 11 Cases of Intervention Energy Holdings, LLC and Intervention Energy, LLC (the "EIG MTD"). (D.I. 27.)

**Procedural Background**

On May 20, 2016, Intervention Energy Holding, LLC ("IE Holdings") and Intervention Energy, LLC ("IE") (together, in these jointly administered proceedings, the "Debtors") filed a voluntary chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Delaware (the "Voluntary Petition").[3] (D.I. 1.) On May 24, 2016, EIG Energy Fund XV-A,

---

[1] By order dated May 25, 2016, this Court authorized joint administration of the following debtors in these chapter 11 cases: Intervention Energy Holdings, LLC; and Intervention Energy, LLC. D.I. 33. Items on the docket for Case No. 16-11247 are referred to as "D.I. ___."

[2] This Opinion constitutes the findings of fact and conclusions of law required by Fed. R. Bankr. P. 7052. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A) & (O).

[3] The same day, the Debtors filed the Declaration of John R. Zimmerman in Support of Chapter 11 Petitions and First Day Motions (the "Zimmerman Decl."). D.I. 11. The Zimmerman Decl. was not admitted as part of the hearing record on June 2, 2016; however, I will take judicial notice of it for this purpose only and only for undisputed background facts. "Federal Rule of Evidence 201 authorizes a court to take judicial notice of an adjudicative fact if that fact is 'not subject to reasonable dispute' . . . as long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." *Nantucket Inv'rs II v. California Fed. Bank (In re Indian Palms Assocs.)*, 61 F.3d 197, 205 (3d Cir. 1995). The parties stipulated to the admission of the relevant documents. D.I. 61.

L.P. (hereinafter referred to as "EIG")[4] filed the EIG MTD asserting, among other things, that IE Holdings was not authorized to file the Voluntary Petition. (EIG MTD ¶ 15.) EIG argues that, absent its consent to commence a chapter 11 case, IE Holdings lacked authority to file the Voluntary Petition under the Intervention Energy Holdings, LLC Second Amended and Restated Limited Liability Company Agreement (the "Operating Agreement") (D.I. 27, Ex. H), which requires "approval of *all* Common Members . . . [to] commence a voluntary case under any bankruptcy" (EIG MTD ¶ 15). For purposes of disposition of this part of the EIG MTD, the material facts are not in dispute.[5]

At the May 26, 2016, hearing on first day motions, the Court scheduled briefing and argument, limited to the issue of whether IE Holdings lacked authority to file its chapter 11 petition. The Debtors filed their response to the EIG MTD (the "Debtors' Response") on May 31, 2016. (D.I. 52.) EIG filed its Reply in Support of the EIG MTD on June 1, 2016 (the "EIG Reply"). (D.I. 58.) A hearing to consider the motion and response was held on June 2, 2006.

**Factual Background**

IE Holdings and IE are limited liability companies formed in 2007, and governed under the laws of the State of Delaware. (Zimmerman Decl. ¶ 9, Operating Agreement § 12.9.) They are private, non-operated oil and natural gas exploration and production companies, almost entirely located in North Dakota. (Zimmerman Decl. ¶ 9.) IE Holdings is owned as follows: 84.73%—Intervention Energy Investment Holdings, LLC ("IEIH"); 15.27%—various business and individual investors. (Zimmerman Decl. ¶ 21.) IE Holdings issued 22,000,001 Common

[4] EIG Energy Fund XV, L.P., movant EIG Energy Fund XV-A, L.P., EIG Energy Fund XV-B, L.P., and EIG Energy Fund XV (Cayman), L.P. are funds managed and advised by EIG Management Company LLC. For ease of reference, the movant, EIG Energy Fund XV-A, L.P., is hereinafter referred to as "EIG."

[5] In the EIG MTD, EIG also urges dismissal for two additional reasons: (1) the Debtors are unable to confirm a plan, and (2) the chapter 11 filings are made in bad faith. EIG MTD 3-5. I decided to bifurcate determination of the issues, reach first the corporate authority issue, and address only that here.

Units: IEIH holds 22,000,0000 Common Units and EIG holds but one Common Unit. (Zimmerman Decl. ¶ 19.) IE is a wholly-owned subsidiary of IE Holdings. (Zimmerman Decl. ¶ 18.) EIG is an institutional investor specializing in private investments in global energy, resource, and related infrastructure projects and companies. (EIG MTD ¶ 11.)

On January 6, 2012, the Debtors and EIG entered into a Note Purchase Agreement (the "Note Purchase Agreement"), whereby EIG provided up to $200 million in senior secured notes (the "Secured Notes"). (Zimmerman Decl. ¶ 23, EIG MTD ¶ 14.) As of the date of the Voluntary Petition, the principal amount outstanding under the Secured Notes was approximately $140 million. (Zimmerman Decl. ¶ 24.) The Secured Notes are secured by liens on certain of the Debtors' assets, including, among other things, all inventory, accounts, equipment, fixtures, deposit accounts, and cash collateral. (Zimmerman Decl. ¶ 24, EIG MTD ¶ 14.) Specifically, with respect to cash collateral, the Debtors granted EIG a lien on all amounts held in any deposit account of the Debtors, as well as a lien on the Debtors' rights to payment under any contract. (Zimmerman Decl. ¶ 25, EIG MTD ¶ 14.)

On September 15, 2014, the Debtors and EIG entered into Amendment No. 3 to the Note Purchase Agreement (the "Third Amendment") to expand EIG's funding commitment from $110 million to $150 million. (Zimmerman Decl. ¶ 32, EIG MTD ¶ 18.) In connection with the Third Amendment, the parties amended certain elements of the positive debt covenant calculations (the "Maintenance Covenants"). (Zimmerman Decl. ¶ 32, EIG MTD ¶ 19.) In October 2015, EIG declared an event of default based on the Debtors' failure to comply with the Maintenance Covenants. (Zimmerman Decl. ¶ 33, EIG MTD ¶ 20.)

On December 28, 2015, the Debtors and EIG negotiated and entered into Amendment No. 5, Forbearance Agreement and Contingent Waiver (the "Forbearance Agreement").

(Zimmerman Decl. ¶ 34, EIG MTD ¶ 21, D.I. 27, Ex. N.) The Forbearance Agreement provided that EIG would waive all defaults if the Debtors raised $30 million of equity capital to pay down a portion of the existing Secured Notes by June 1, 2016. (Zimmerman Decl. ¶ 34, EIG MTD ¶ 22.) As a condition to the effectiveness of the Forbearance Agreement, the Debtors were required to fulfill the following conditions precedent:

> The Administrative Agent shall have received a fully executed amendment to the limited liability company agreement of the Parent in form and substance satisfactory to the Administrative Agent (i) admitting EIG or its Affiliate as a member of the Parent with one common unit and (ii) amending such limited liability company agreement to require approval of each holder of common units of the Parent prior to any voluntary filing for bankruptcy protection for the Parent of the Company.

(Forbearance Agreement § 7(b).) Also on December 28, 2015, IE Holdings enacted Amendment No. 1 to the Intervention Energy Holdings, LLC Second Amended and Restated Limited Liability Company Agreement (the "Amendment")[6] to include the unanimous consent requirement to file bankruptcy (the "Consent Provision"). (Zimmerman Decl. ¶ 34, EIG MTD ¶ 23, Amendment ¶ 4, D.I. 27, Ex. L.) To give effect to the Consent Provision, IE Holdings then issued a single common unit to EIG for a common capital contribution of $1.00, making EIG a common member. (Zimmerman Decl. ¶ 34, EIG MTD ¶ 23, Amendment, Schedule A.)

It is not disputed that, but for the Amendment, IE Holdings would have been authorized to seek federal bankruptcy relief.

**DISCUSSION**

The parties have made several interesting arguments with respect to state law and contractual treatment of fiduciary obligations. EIG argues that an LLC that has abrogated its

[6] Amending § 5.1(d) of the Operating Agreement.

fiduciary responsibilities to the extent permitted by Delaware law may contract away its right to file bankruptcy at will.[7] (EIG MTD ¶ 32.) EIG cites to cases in which courts have upheld consent provisions among LLC members.[8] (EIG MTD ¶¶ 34-35 & n.55.) In contrast, the Debtors, relying upon the recent case of *In re Lake Michigan Beach Pottawatamie Resort LLC*, draw a parallel between the "golden share"[9] given to EIG and a blocking director installed on the board of a special purpose entity (SPE), arguing that abrogating fiduciary duties is exactly what is fatal to EIG's argument—that the blocking member (or, in this case, holder of the "golden share") must retain a duty to vote in the best interest of the potential debtor to comport with federal bankruptcy policy.[10] (Debtors' Response 11-14.)

---

[7] "A limited liability company agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a member, manager or other person to a limited liability company or to another member or manager or to another person that is a party to or is otherwise bound by a limited liability company agreement; provided, that a limited liability company agreement may not limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing." 6 Del. C. § 18-1101(e).

[8] *See In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 827 (Bankr. N.D. Tex. 2006) (upholding unanimous consent provision in LLC operating agreement) (LLC debtor). EIG cites *In re Avalon Hotel Partners, LLC*, 302 B.R. 377, 381 (Bankr. D. Or. 2003) (LLC debtor), as evidence of a court "upholding 75% member consent requirement in LLC operating agreement and dismissing voluntary case." EIG MTD ¶ 34 n.55. However, although the *Avalon Hotel Partners* court stated that it *would have* dismissed the case for violating the consent provision, the filing was subsequently ratified and the motion to dismiss denied. 302 B.R. at 381, 385.

Moreover, *Avalon Hotel Partners* runs counter to EIG's argument. There, the *Avalon Hotel Partners* court considered a promise not to file a chapter 11 petition made by an LLC and its manager to a state court. *Id.* at 383. The court considered the impact of the promise on the LLC's creditors and minority members who were not parties to the state court litigation. *Id.* The court held that to uphold the promise would be analogous to upholding a covenant not to file bankruptcy, and that, despite the principle of judicial estoppel, the promise was unenforceable as a matter of public policy. *Id.* at 382-83.

The court subsequently dealt with the broken promise as one factor in a bad faith analysis. *Id.* at 383. Finally, despite that the LLC and its manager "played fast and loose" with the state court, the court considered the subsequent ratification and held that the filing was in good faith. *Id.* at 383-384.

[9] This term has been used mainly to refer to a government retaining control over privatized companies. *Investopedia – Golden Share*, INVESTOPEDIA, http://www.investopedia.com/terms/g/goldenshare.asp (last visited June 2, 2016). "A type of share that gives its shareholder veto power over changes to the company's charter. A golden share holds special voting rights, giving its holder the ability to block another shareholder from taking more than a ratio of ordinary shares. Ordinary shares are equal to other ordinary shares in profits and voting rights. These shares also have the ability to block a takeover or acquisition by another company." *Id.* Golden shares are now outlawed in the European Union. *Id.*

[10] *See* 547 B.R. 899, 911-13 (Bankr. N.D. Ill. 2016) (LLC debtor).

In light of my disposition of the federal public policy issue which follows, and reluctant to accept the parties' invitation to decide what may well be a question of first impression of state law (i.e., determining the scope of LLC members' freedom to contract under applicable state law provisions) when an alternate ground for decision is present, I find it unnecessary to address these arguments.

The Debtors note in their Response that it is axiomatic that a debtor may not contract away the right to a discharge in bankruptcy.[11] (Debtor's Response 8.) It has been said many times and many ways. "[P]repetition agreements purporting to interfere with a debtor's rights under the Bankruptcy Code are not enforceable."[12] "If any terms in the Consent Agreement . . . exist that restrict the right of the debtor parties to file bankruptcy, such terms are not enforceable."[13] "[A]ny attempt by a creditor in a private pre-bankruptcy agreement to opt out of the collective consequences of a debtor's future bankruptcy filing is generally unenforceable. The Bankruptcy Code pre-empts the private right to contract around its essential provisions."[14] "[I]t would defeat the purpose of the Code to allow parties to provide by contract that the provisions of the Code should not apply."[15] "It is a well settled principal that an advance agreement to waive the benefits conferred by the bankruptcy laws is wholly void as against public policy."[16]

---

[11] Citing, *inter alia*, *Klingman v. Levinson*, 831 F.2d 1292, 1296 n.3 (7th Cir. 1987) ("For public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy.") (individual debtor).

[12] *MBNA Am. Bank, N.A. v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 275 B.R. 712, 723 (Bankr. D. Del. 2002) (corporate debtor).

[13] *Hayhoe v. Cole (In re Cole)*, 226 B.R. 647, 651-54 (B.A.P. 9th Cir. 1998) (collecting cases) (individual debtor).

[14] *In re Pease*, 195 B.R. 431, 435 (Bankr. D. Neb. 1996) (individual debtor).

[15] *In re 203 N. LaSalle St. P'ship*, 246 B.R. 325, 331 (Bankr. N.D. Ill. 2000) (partnership debtor).

[16] *In re Tru Block Concrete Prods., Inc.*, 27 B.R. 486, 492 (Bankr. S.D. Cal. 1982) (corporate debtor); *Fallick v. Kehr*, 369 F.2d 899, 906 (2d Cir. 1966) (Friendly, J., dissenting) (individual debtor). *See also In re Citadel Properties, Inc.*, 86 B.R. 275, 275 (Bankr. M.D. Fla. 1988) ("The Court pauses to suggest that a total prohibition against filing for bankruptcy would be contrary to Constitutional authority as well as public policy.) (corporate debtor).

The rule is not new:

> The agreement to waive the benefit of bankruptcy is unenforceable. To sustain a contractual obligation of this character would frustrate the object of the Bankruptcy Act, particularly of section 17 (11 U.S.C. § 35). This was held by the Supreme Judicial Court of Massachusetts, Federal Nat. Bank v. Koppel, 148 N.E. 379, 380 (Mass. 1925), where it was said: "It would be repugnant to the purpose of the Bankruptcy Act to permit the circumvention of its object by the simple device of a clause in the agreement, out of which the provable debt springs, stipulating that a discharge in bankruptcy will not be pleaded by the debtor. The Bankruptcy Act would in the natural course of business be nullified in the vast majority of debts arising out of contracts, if this were permissible. It would be vain to enact a bankruptcy law with all its elaborate machinery for settlement of the estates of bankrupt debtors, which could so easily be rendered of no effect. The bar of the discharge under the terms of the Bankruptcy Act is not restricted to those instances where the debtor has not waived his right to plead it. It is universal and unqualified in terms. It affects all debts within the scope of its words. It would be contrary to the letter of section 17 of the Bankruptcy Act as we interpret it to uphold the waiver embodied in this note. So to do would be incompatible with the spirit of that section. Its aim would largely be defeated."
>
> There are other grounds for sustaining the action of the referee, but the one mentioned is enough.[17]

Even so long ago as 1912, the United States Supreme Court was forced to address parties attempting to circumvent the bankruptcy laws by "circuity of arrangement."[18] Today's resourceful attorneys have continued that tradition.[19]

Yet, to contract away the right to seek bankruptcy relief is precisely what both parties here have attempted to accomplish. EIG "specifically negotiated Intervention's ability to file a voluntary bankruptcy proceeding." (EIG MTD ¶ 23.) Throughout the EIG MTD, EIG emphasizes and insists upon its "***contracted-for protections, including the Consent Provision***"

---

[17] *In re Weitzen*, 3 F.Supp. 698, 698-99 (S.D.N.Y. 1933) (individual debtor).

[18] *Nat'l Bank of Newport v. Nat'l Herkimer Cnty. Bank*, 225 U.S. 178, 184 (1912) ("To constitute a preference, it is not necessary that the transfer be made directly to the creditor. It may be made to another, for his benefit. If the bankrupt has made a transfer of his property, the effect of which is to enable one of his creditors to obtain a greater percentage of his debt than another creditor of the same class, circuity of arrangement will not avail to save it.").

[19] *See, e.g.*, *NHL v. Moyes*, No. CV-10-01036-PHX-GMS, 2015 WL 7008213, at *8 (D. Ariz. Nov. 12, 2015) (holding that "If a contractual term denying the debtor parties the right to file bankruptcy is unenforceable, then a contractual term prohibiting the non-debtor party that controls the debtors from causing the debtors to file bankruptcy is equally unenforceable. Parties cannot accomplish through 'circuity of arrangement' that which would otherwise violate the Bankruptcy Code.") (LLC debtor).

indisputably meant to block any voluntary bankruptcy filing. (EIG MTD ¶ 32.) In its Reply, EIG again emphasizes that "EIG [] ***bought and paid*** for its Common Unit (including all rights related thereto) . . . ." (EIG Reply ¶ 14.) Because § 7(b) of the Forbearance Agreement requires, as a condition to the effectiveness of the agreement, that IE both amend its LLC Agreement to institute the unanimous Consent Provision and grant the blocking share, the intent of the parties is unmistakable.

Both parties argue that, were I to decide this issue for the other side, systemic disruption will follow. EIG warns that if I were to declare the Consent Provision here void as contrary to federal public policy, not only would I vitiate the will of state legislatures that LLC members be free to contract, but also that confusion will reign about the breadth of an LLC's right to contract.[20]

The Debtors, on the other hand, argue that if I permit the enforcement of the Consent Provision, the landscape in debtor-creditor relations will be dramatically altered—that lenders will henceforth demand such a provision in every loan/forbearance agreement.[21] True, lenders usually are not reticent to demand provisions that borrowers may often consider oppressive, but, as EIG's counsel replied at argument, as unwelcome as the consequence of doing so may be, a borrower can always say, "No." A borrower can also choose to seek bankruptcy relief sooner than it would prefer, rather than agree to any provision in a forbearance agreement that a borrower finds unacceptable.

---

[20] EIG urges consideration of *CML V, LLC v. Bax*, 28 A.3d. 1037 (Del. 2011), to emphasize the breadth of discretion afforded to Delaware LLCs. EIG Reply ¶ 12. *Bax* nowhere addresses federal bankruptcy law.

[21] *See, e.g.*, *Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011 (9th Cir. 2012) ("[I]t is against public policy for a debtor to waive the prepetition protection of the Bankruptcy Code. . . . This prohibition of prepetition waiver has to be the law; otherwise, astute creditors would routinely require their debtors to waive.") (internal citations omitted) (corporate debtor).

The federal public policy to be guarded here is to assure access to the right of a person, including a business entity,[22] to seek federal bankruptcy relief as authorized by the Constitution and enacted by Congress. It is beyond cavil that a state cannot deny to an individual such a right.[23] I agree with those courts that hold the same applies to a "corporate" or business entity, in this case an LLC.[24]

A provision in a limited liability company governance document obtained by contract, the sole purpose and effect of which is to place into the hands of a single, minority equity holder the ultimate authority to eviscerate the right of that entity to seek federal bankruptcy relief, and the nature and substance of whose primary relationship with the debtor is that of creditor—not equity holder—and which owes no duty to anyone but itself in connection with an LLC's decision to seek federal bankruptcy relief, is tantamount to an absolute waiver of that right, and, even if arguably permitted by state law, is void as contrary to federal public policy.[25] Under the

[22] Under the Bankruptcy Code, "person" is defined to include "individual, partnership, and corporation . . . ." 11 U.S.C. § 101(41).

[23] *See* Bankruptcy Code §§ 524(c) (discharge of debt may be waived only after post-petition procedures are followed), and 727(a)(10) (waiver of discharge of all debts is permitted only after bankruptcy court approval).

[24] *See In re Lake Michigan Beach Pottawattamie Resort LLC*, 547 B.R. 899, 912 (Bankr. N.D. Ill. 2016) ("In the same way that individuals may not contract away their bankruptcy rights, corporations should be similarly constrained.") (LLC debtor); *In re Bay Club Partners-472, LLC*, No. 14-30394-rld11, 2014 WL 1796688, at *4-5 (Bankr. D. Or. May 6, 2014) (holding prepetition waivers of bankruptcy protection are unenforceable as against public policy) (LLC debtor); *In re Shady Grove Tech Ctr. Assocs. Ltd. P'ship*, 216 B.R. 386, 390 (Bankr. D. Md. 1998) *supplemented*, 227 B.R. 422 (Bankr. D. Md. 1998) (corporate contractual "prohibitions against the filing of a bankruptcy case are unenforceable") (partnership debtor); *see also* Bankruptcy Code §§ 109, 302, 303 (clearly reflecting congressional intent about when, and under what circumstances, a person is entitled to relief under Title 11 U.S.C.).

[25] EIG cites to *In re Global Ship Sys., LLC*, 391 B.R. 193 (S.D. Ga. 2007) (LLC debtor), and the unpublished case *In re DB Capital Holdings, LLC v. Aspen HH Ventures, LLC (In re DB Capital Holdings, LLC)*, No. 10-046, 2010 WL 4925811 (B.A.P. 10th Cir. Dec. 6, 2010) (LLC debtor), as direct contrary authority. Closest on point is *Global Ship Sys.* in which a creditor who also owned Class B equity interests in the LLC valued initially at 20% was held to "wear two hats" and therefore could block a bankruptcy where an entity who is exclusively a creditor could not. *Global Ship Sys.*, 391 B.R. at 199, 203. However, the method by which the creditor in *Global Ship Sys.* received its equity interests was not subject to question or analysis. There is no way to compare that creditor's interests to EIG's contracting for one golden share solely for the purpose to control any potential filing. The *DB Capital Holdings* court upheld an absolute bar on filing for bankruptcy that the LLC's Manager alleged was "'executed at the demand, and for the sole benefit of' Debtor's main secured creditor . . . ." *DB Capital Holdings*, 2010 WL 4925811, at *2-3. The court held that, absent coercion, such agreement is not void as against public policy. I disagree.

undisputed facts before me, to characterize the Consent Provision here as anything but an absolute waiver by the LLC of its right to seek federal bankruptcy relief would directly contradict the unequivocal intention of EIG to reserve for itself the decision of whether the LLC should seek federal bankruptcy relief. Federal courts have consistently refused to enforce waivers of federal bankruptcy rights. I now join them, and conclude that the Debtors possessed the necessary authority to commence their chapter 11 proceedings.

**CONCLUSION**

For the reasons set forth above, the Motion to Dismiss is denied, in part.

An appropriate order will follow.

BY THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT

Dated: June 3, 2016